BALLARD SPAHR, LLP
By:   Martin C. Bryce, Esq.
      bryce@ballardspahr.com
      Christopher N. Tomlin, Esq.
      tomlinc@ballardspahr.com
Plaza 1000 - Suite 500
Main Street
Voorhees, New Jersey  08043-4636
Telephone: 856.761.3400
Facsimile: 856.761.1020

*Attorneys for Defendant Palisades Collection, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANE T. WOOD, | : |
| Plaintiff, | : Civil Action No. 2:09-cv-04627 |
| v. | : |
| PALISADES COLLECTION, LLC, et al., | : |
| Defendants. | : |

### SUPPLEMENTAL BRIEF OF PALISADES COLLECTION, LLC
### PURSUANT TO THE COURT'S ORDER OF JUNE 29, 2010

Pursuant to the Court's Order of June 29, 2010, Palisades Collection, LLC ("Palisades") hereby submits its Supplemental Brief in further support of its Motion to Compel Arbitration.  Palisades will not unnecessarily repeat in this Supplemental Brief points and arguments made in its prior filings.  To the extent necessary, Palisades incorporates its prior arguments.

Anthony Demczak, in both his May 28, 2010 testimony and his June 24, 2010 Declaration (the "Demczak Declaration"), docket #44, testified based on his personal knowledge and experience as to: (1) the record-keeping, including the account notes on Wood's account

which he identified, of Chase Bank USA, N.A. ("Chase") and First USA Bank, N.A. ("First USA"); (2) the policies and procedures requiring and ensuring that cardholders are in fact mailed credit card agreements and changes-in-terms; (3) the fact that Wood was mailed the Cardmember Agreement (which he identified during the May 28 hearing and which is attached to his Declaration as Exhibit F) pursuant to those policies and procedures; and (4) the account notes which reflect that Wood was mailed the August 2003 change-in-terms (which he also identified during the hearing and which is attached to his Declaration as Exhibit D).

Consistent with the account notes, Demczak established that Wood applied for and opened a credit card account with First USA in March 2001. Demczak further explained that as was the standard practice of First USA, when Wood's application was approved, his credit card and the Cardmember Agreement were mailed him. The Cardmember Agreement contained an arbitration agreement requiring the arbitration of "[a]ny claim, dispute or controversy" "arising from or relating in any way to this Agreement or your Account." Cardmember Agreement at page 4, Exhibit F to Demczak Declaration. The Cardmember Agreement provided it would become effective when first used and further provided for the application of Delaware law to its terms:

> GOVERNING LAW: THIS AGREEMENT AND YOUR
> ACCOUNT WILL BE GOVERNED BY THE LAW OF THE
> STATE OF DELAWARE AND, AS APPLICABLE, FEDERAL
> LAW.

Id. at page 5.[1] The Cardmember Agreement also provided that "[a]ll extensions of credit in connection with your Account are being made by First USA Bank, N.A. in Wilmington,

---

[1] There has never been any dispute that Wood used his credit card on numerous occasions.

Delaware." Id. at page 3.  Furthermore, the Cardmember Agreement provided that First USA could change its terms with notice.  Id. at page 5.

Consistent with the account notes, Demczak established that in August 2003, First USA mailed to its Cardmembers, including Wood, its "IMPORTANT NOTICE FOR FIRST USA CREDIT CARD CUSTOMERS ABOUT CHANGES TO YOUR FIRST USA CARDMEMBER AGREEMENT – PLEASE READ AND RETAIN FOR YOUR RECORDS."  See Demczak Declaration at ¶ 8 & Exhibit D.

The Important Notice provided under the heading "EFFECTIVE DATE/NON-ACCEPTANCE INSTRUCTIONS FOR THE ABOVE CHANGE(S)" that the new terms could be rejected if the cardmember so notified First USA in writing: "**If you wish to reject these terms and close your account, you must notify us in writing by September 26, 2003, that you wish to reject them**."  Important Notice at page 2 (bold face and capitalization in original).[2]  As explained by Demczak, the account notes, created by First USA and continually utilized and maintained by Chase, do not reflect that Wood ever submitted such a rejection.  In fact, Wood has never contended that he attempted to opt-out of the Important Notice.  Nor has he ever disputed that he continued to use his First USA card thereby agreeing to the change-in-terms specified in the Important Notice.[3]

Demczak's testimony and Declaration as to the operative policies and procedures at both First USA and Chase are more than sufficient to create a presumption that Wood in fact

---

[2]   The second page of the Important Notice bears the number "2" on the bottom center line and is the eighth page of Exhibit D to the Demczak Declaration due to the manner in which it was produced by Chase.

[3]   Palisades explained at length in its Reply in Further Support of its Motion to Compel Arbitration (docket #19 attachment 1) that such change-in-terms procedures are permitted under the operative Delaware law.  It will not repeat that briefing here.

received the Cardmember Agreement and the Important Notice. Demczak testified at length (subject to cross-examination) as to the purpose and creation of the account notes, that Chase adopted First USA's computer and record-keeping system as reflected in the account notes, that Chase continually utilized and maintained the account notes, that as a matter of policy and procedure Wood would have received the Cardmember Agreement when he opened his account and that the account notes are intended to and in fact reflect each and every change-in-terms mailed to Wood including the August 2003 Important Notice.

The "mailbox rule" is "a settled feature of the federal common law" and "provides that the proper and timely mailing of a document has been received by the addressee in the usual time." Hoefs v. CACV of Col. LLC, 365 F. Supp.2d 69, 72-73 (D. Mass. 2005) (citations omitted).[4] "The fact that a party mails a document creates a rebuttable perception that the addressee actually received the mailing. Further, a party need not show conclusively that a document was placed in the mail; a custom or policy of mailing creates a presumption that such mailing occurred." Johnson v. Arrow Fin. Serv., LLC, No. 06-0013, 2006 WL 2710663, at *3 (N.D. Ill. Sept. 15, 2006) (citations omitted). See also Lawrence v. Household Bank (SB), N.A., 343 F. Supp.2d 1101, 1110 (M.D. Ala. 2004) (affidavit that "it was defendants' standard practice to distribute cardmember agreements to new cardmembers and that the change-in-terms notice was mailed" sufficient to invoke "mail-box rule").

---

[4] Under well settled Delaware law, which applies to this matter as previously briefed by Palisades (docket #25), evidence that a document was mailed creates a presumption of delivery which cannot be rebutted by a mere general denial. Graham v. Commercial Credit Co., 194 A.2d 863, 865 (Del. Ch. 1963); York Federal Savings & Loan Ass'n v. Heflin, No. 94L-08-018, 1995 WL 717288 (Del. Superior Nov. 21, 1995). New Jersey law is to the same effect. See, e.g., SSI, Med. Servs., Inc. v. State Dep't of Human Resources, 146 N.J. 614, 621, 685 A.2d 1 (1996); Worldwide Asset Purchasing II, LLC v. Briggs, 2010 WL 391834, at *3 (N.J. App. Div. Feb. 5, 2010).

Indeed, in the vast majority of the cases in which arbitration clauses were added to credit card agreements by amendment through change-in-terms procedures, the facts were established through the submission of corporate affidavits based upon the affiant's review of the company's business records.  See, e.g., Goetsch v. Shell Oil Co., 197 F.R.D. 574, 578 (W.D.N.C. 2000) ("It is not necessary that Defendant prove actual receipt of the [arbitration amendment] notice.  Proof of mailing may be accomplished by presenting circumstantial evidence, including evidence of customary mailing practices used in the sender's business …. That has been done here.  See Rossi Affidavit ….").

Given all of the uncontroverted material facts as testified to by Demczak and established through the various declarations submitted by Palisades, Palisades' evidence is clearly sufficient to establish a presumption of delivery that has not been rebutted by Wood.  See, e.g., Bernier v. Schaefer, 11 Ill. 2d 525, 144 N.E.2d 577 (1957) ("It was not necessary that the affiant state each detail of the process by which he sent the notice; e.g., that he placed it in an envelope, sealed the envelope, etc.").

At most, Wood contends that he does not recall agreeing to any arbitration agreement.  See Wood Declaration, docket #10 attachment #1, at ¶ 7.  However, such blanket assertions that he never entered into or received an arbitration agreement or any change-in-terms notice containing the same are wholly deficient as a matter of law.  See, e.g., Discover Bank v. Vaden, 489 F.3d 594, 607 (4th Cir. 2007) (cardholder under Delaware law "bears the burden of rebutting the presumption of receiving the arbitration agreement, which was included in a notice of amendment to the cardmember agreement"), rev'd in part on other grounds, 129 S. Ct. 1262 (2009); Goetsch, 197 F.R.D. at 578 (enforcing arbitration agreement added to credit card agreement through change in terms notice: "a letter properly addressed, stamped and mailed

may be presumed to have been received by the addressee in the due course of mail.  Thus, Defendant need only prove that it properly mailed the arbitration notice to its cardmembers.") (quoting Marsh v. First USA Bank, N.A., 103 F. Supp.2d 909, 918 (N.D. Tex. 2000)).  Wood offers no facts to substantiate any claim that he did not receive either the Important Notice or the Cardmember Agreement.  See, e.g., Lawrence, 343 F. Supp.2d at 1110 ("generalized denial" insufficient to rebut presumption of receipt).  Nor has he contended that he opted out of the Important Notice.

To the extent that the October 2007 change-in-terms, see Demczak Declaration at ¶ 5 & Exhibit B, can be construed to present any discrepancy (a contention which Palisades does not accept), such is wholly immaterial for several reasons.  First, Palisades' Motion to Compel has never been predicated upon the October 2007 CIT.  Second, that CIT does not purport to make material changes to the Arbitration Agreement between the parties and Wood has never argued otherwise.  For instance, the October 2007 CIT does not in any way deal with class actions.  Finally, the October 2007 CIT cannot and does not negate the facts, as established through Demczak's testimony and Declaration and the account notes, that Wood was mailed both the Cardmember Agreement and the August 2003 Important Notice.

To the extent there is any question as to whether Wood is bound by the Arbitration Agreement contained in the Important Notice, individual arbitration still should be compelled.  There is no question that the Cardmember Agreement contained an arbitration agreement – albeit without an express class action waiver.  There is no contention – or certainly no evidence – that First USA or Chase amended the Cardmember Agreement before selling Wood's account to Palisades so as to either delete any arbitration agreement or expressly permit

class action arbitration.  Absent an express agreement to class action arbitration – and again none exists in this case – only individual arbitration may be compelled.

The Supreme Court's recent decision in Stolt-Nielsen SA v. Animal Feeds Internat'l Corp., __ U.S. __, 2010 WL 1655826 (Apr. 27, 2010) is on point and makes clear "the central or 'primary' purpose of the [Federal Arbitration Act ("FAA")] … to ensure that 'private agreements to arbitrate are enforced according to their terms.'"  2010 WL 1655826, at *11.  It recognizes that "[w]hile the interpretation of an arbitration agreement is generally a matter of state law, the FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a mater of consent, not coercion.'"  Id. (citation omitted).  Stolt-Nielsen concluded that "a party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so."  Id. at *13 (emphasis in original).  The Supreme Court explained that requiring class arbitration as a matter of policy "is fundamentally at war with the foundational FAA principle that arbitration is a matter of consent."  Id.  Consequently, should the Court enforce the initial Cardmember Agreement, which does not contain an express class action waiver, individual arbitration should be compelled.  Indeed, Stolt-Nielsen involved just such a silent arbitration agreement.

In summary, Wood has not, and cannot, establish that he did not receive both the original Cardmember Agreement and the subsequent Important Notice adding the revised arbitration agreement.  In short, there is no question that Wood was party to an arbitration agreement that, at the very least, did not expressly permit class arbitration.  Accordingly, under Stolt-Nielsen his individual claims must be compelled to arbitration.

Finally, Stephen Braun's May 28, 2010 testimony and Supplemental Declaration establish that Palisades in fact owns Wood's account.  He explained, from personal knowledge,

that Wood's account was purchased by Palisades in November 2008 pursuant to the Credit Card Account Purchase Agreement including its exhibits.  That Agreement, which was accepted into evidence, explicitly provides that Chase was selling all of its rights to Palisades: "Seller will sell, assign and transfer to Purchaser and purchaser shall purchase all Seller's rights, title and interest in and to eligible Charged-off Accounts."  Credit Card Account Purchase Agreement at ¶ 2(b).  Braun testified, based on his personal knowledge and review of Palisades' records created and maintained in the ordinary course of business, that Wood's account was in fact one of the "Charged-off Accounts" sold by Chase to Palisades.  He explained and supported this testimony citing, among other things, the third "WHEREAS" clause on page 2 (Palisades 00002) of the Agreement which called for multiple sales of accounts, the Bill of Sale dated November 10, 2008 (Palisades 00038) and the data stream sent by Chase (as reflected in pages Palisades 00035-37 attached to the Agreement).  There is simply no evidence to the contrary.

       For these reasons, Palisades has the standing to, and may in fact, enforce the parties' Arbitration Agreement.  For the same reasons, Palisades is not bound by any settlement of litigation or policy change of Chase entered into post-sale.  There is nothing in the Credit Card Account Purchase Agreement, the Cardmember Agreement or the Important Notice, and Wood certainly fails to point to any such language, that would so bind Palisades.

Accordingly, for all of these reasons and for the reasons previously briefed by Palisades, individual arbitration should be compelled.

Dated: July 13, 2010

Respectfully submitted,

/s/ Martin C. Bryce, Jr.
Martin C. Bryce, Jr.
Christopher N. Tomlin, Esquire
BALLARD SPAHR LLP
Plaza 1000 – Suite 500
Main Street
Voorhees, NJ  08043
Phone: 856.761.3400
Facsimile: 856.761.1020
E-mail: tomlinc@ballardspahr.com

OF COUNSEL:

Attorneys for Defendant Palisades Collection LLC

Alan S. Kaplinsky, Esquire
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Phone: 215.665.8500
Facsimile: 215.864.8999
E-mail: kaplinsky@ballardspahr.com

B<small>ALLARD</small> S<small>PAHR</small>, LLP
By:   Martin C. Bryce, Esq.
      bryce@ballardspahr.com
      Christopher N. Tomlin, Esq.
      tomlinc@ballardspahr.com
Plaza 1000 - Suite 500
Main Street
Voorhees, New Jersey  08043-4636
Telephone: 856.761.3400
Facsimile: 856.761.1020

*Attorneys for Defendant Palisades Collection, LLC*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DANE T. WOOD, | : |
| Plaintiff, | : Civil Action No. 2:09-cv-04627 |
| v. | : **CERTIFICATE OF SERVICE** |
| PALISADES COLLECTION, LLC, et al., | : |
| Defendants. | : |

      I, Martin C. Bryce, Jr., hereby certify that I caused a true and correct copy of the foregoing Supplemental Brief of Palisades Collection, LLC Pursuant to the Court's Order of June 29, 2010 to be electronically filed via the ECF system, and served via same upon the following:

>Philip D. Stern, Esquire
>Wacks & Hartmann, LLC
>55 Madison Avenue
>Suite 320
>Morristown, NJ  07960

                      /s/  Martin C. Bryce, Jr.
                      Martin C. Bryce, Jr.