## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DANE T. WOOD, | : |
|  | : |
| Plaintiff, | :     Civil Action No. 09-4627 (SRC) |
|  | : |
| v. | : |
|  | :     **OPINION** |
| PALISADES COLLECTION, LLC et al., | : |
|  | : |
| Defendants. | : |

**CHESLER, U.S.D.J.**

This matter comes before this Court on the motion to compel arbitration and stay all proceedings pending completion of arbitration by Defendant Palisades Collection, LLC ("Palisades"). For the reasons set forth below, Defendant's motion will be granted.

## BACKGROUND

This case arises out of a dispute over the practices of a collection agency in regard to credit card collections. On September 8, 2009, Plaintiff Dane T. Wood filed a class action Complaint which alleged that Palisades engaged in collection practices which violate the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. The Complaint alleges that Palisades attempted to collect from Plaintiff on a credit card account it had purchased from "Chase," which had originated with "First USA." (Compl. ¶ 17.) In the Complaint, Plaintiff seeks to represent a class of Plaintiffs with addresses in the state of Kansas who received certain telephone calls from Palisades in connection with the collection of a debt.

On November 3, 2009, Defendant filed the instant motion. Defendant argues that Plaintiff must pursue his claims in arbitration because an applicable contractual provision

specifies binding arbitration as the only means for resolving any related controversy.  Plaintiff opposes the motion.

On March 24, 2010, the Court heard oral argument on the motion.  At oral argument, the Court Ordered supplemental briefing on choice of law issues, and set the matter for an evidentiary hearing on the question of the existence of any applicable arbitration agreement.  The evidentiary hearing was held on May 24, 2010.  The parties submitted further, additional rounds of briefing both before and after the evidentiary hearing.

## ANALYSIS

**I.    Did the parties enter into an agreement to arbitrate?**

"A party to a valid and enforceable arbitration agreement is entitled to a stay of federal court proceedings pending arbitration as well as an order compelling such arbitration." Alexander v. Anthony Int'l, L.P., 341 F.3d 256, 263 (3d Cir. 2003).  Before entering such an order, the Court must "ascertain whether the parties entered a valid agreement to arbitrate."  Id. at 264.  The parties in the instant case dispute the existence of an arbitration agreement.

"A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment.  The party opposing arbitration is given the benefit of all reasonable doubts and inferences that may arise."  Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009) (citation omitted).  "Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement."  Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980).

"An unequivocal denial that the agreement had been made, accompanied by supporting

affidavits," ordinarily suffices to raise a triable factual dispute.  Id. at 55.  Plaintiff disputes the existence of an arbitration agreement on various grounds, but none rises to the level of an unequivocal denial.

Defendant contends that, while Plaintiff first opened the account with First USA, the account was later purchased from First USA by Chase Bank, which subsequently sold it to Defendant Palisades.

At the evidentiary hearing, Palisades offered the testimony of Steven Braun, its Director of Litigation.  Braun testified, in brief, that Wood's credit card account had been purchased from Chase Bank.  Palisades then offered the testimony of Anthony Demczak, an employee of Chase Bank USA, N.A. (the "Bank").  In brief, Demczak testified that he was employed as an Operations Manager and that he had reviewed the credit card account records for Plaintiff that had been created and maintained for the Bank.  Demczak stated that, based on those records, he had obtained the original cardholder agreement, as well as all subsequent amendments to that agreement, which, given the Bank's customary business practices, would have been mailed to Plaintiff.  Plaintiff agrees that he opened the credit card account in question, and he raises no dispute over whether the Bank had his valid address on file at all relevant times.  Nor does he challenge the inference that the relevant documents were in fact mailed to him, and received by him.

In brief, examination of the original agreement shows that it contains an arbitration provision, and examination of the subsequent amendments does not show that any amendment ever eliminated the arbitration provision.  Rather, it appears that the amendment identified with the code "ADV810," mailed to Plaintiff on August 5, 2003, contains an amended arbitration

provision.  (Demczak Decl. Ex. D.)  The present litigation comes within the scope of that provision, as it is a dispute with an assignee relating to the account.  The provision requires that such a dispute must be resolved by binding arbitration.

Applying the summary judgment standard to this evidence, this Court finds that Defendant has offered sufficient evidence to persuade a reasonable trier of fact that the parties entered into an arbitration agreement, and that they agreed to resolve the instant dispute by arbitration.  The burden then shifts to Plaintiff to raise a triable factual dispute.

In the final supplementary briefing, Plaintiff raises two kinds of challenges to Defendant's evidence of an applicable arbitration agreement.  First, Plaintiff challenges the testimony regarding Palisades' acquisition of Plaintiff's credit card account.  Second, Plaintiff challenges the documentation of the arbitration agreement.

As to the evidence that Palisades purchased Plaintiff's credit card account from Chase Bank, Plaintiff attacks the evidence on two grounds.  First, Plaintiff, in essence, criticizes Braun's testimony on the ground that Braun did not establish what might be characterized as an airtight chain of custody of the account information as it moved from Chase Bank to the courtroom.  Second, Plaintiff argues that the evidence produced to the Court suggested that there was an impermissible "Officer Code" on the relevant record.  Plaintiff contends that the invalid code may indicate that the account was not, in fact, purchased as Braun had testified.

Neither of these challenges succeeds.  The first challenge points to no evidence that raises any factual dispute.  Rule 56(e)(2) requires the opposing party to offer evidence to "set out specific facts showing a genuine issue for trial."  Plaintiff has not done so.  Rather, the first challenge does no more than point out that Braun's testimony was not so flawless and complete

4

as to be free of any gap.  A party cannot, however, defeat a motion for summary judgment by pointing out that the evidence was not as perfectly complete as it could be.  The Supreme Court has no advised that the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The first challenge does no more than raise such metaphysical doubt.

While the second challenge does point to some actual evidence – the evidence about the Officer Code – it too does not raise a genuine issue of fact, but only some metaphysical doubt. Plaintiff's argument relies on the postulate that the invalid code demonstrates that the account was not purchased pursuant to a particular agreement.  Plaintiff offers no evidence to support this postulate; Plaintiff's theory is based, rather, on pure speculation.  Moreover, Plaintiff has failed to persuade that this is a material factual issue.  Plaintiff has shown no basis for a finder of fact to conclude that the invalid code says anything whatever about whether the account was purchased by Defendant.  There does not appear to be any evidence from which a reasonable factfinder could conclude that Palisades did not purchase the account from Chase Bank.

Plaintiff also raises questions that appear to relate to the sequence of amendments to the initial agreement, and which rest on observing inconsistencies so minute that they merit no discussion.  Plaintiff makes no meaningful challenge to Defendant's evidence that establishes the existence of an arbitration agreement.  Again, Plaintiff has not met his burden under Rule 56 to defeat the motion for summary judgment: he has not offered evidence which raises any triable issue of material fact.

This Court determines that Defendant has submitted sufficient evidence to establish that the parties entered into an arbitration agreement, and that Plaintiff has failed to raise a genuine

issue as to any material fact.  This Court finds no genuine issue of fact concerning the formation

of the agreement, and concludes as a matter of law that the parties entered into an agreement to

arbitrate the instant dispute.

## II.     Is the arbitration agreement enforceable under the relevant state law?

Plaintiff contends that, even if an arbitration agreement exists, it is unconscionable and

unenforceable under New Jersey law, pursuant to Homa v. Am. Express Co., 558 F.3d 225, 233

(3d Cir. 2009) (holding that a class-arbitration waiver is unconscionable under New Jersey law).

Defendant responds that New Jersey law does not apply.  Resolving this dispute requires a two-

step analysis.  First, this Court must determine which state's choice-of-law rules should be

applied in this inquiry.  Second, this Court must apply those choice-of-law rules to decide which

state's substantive law should determine issues of contract enforceability.

The parties' initial and opposition briefs on the motion to dismiss did not address the

choice of law issues.  This Court Ordered supplemental briefing on choice of law.  This Court

finds neither side's position on choice of law to be persuasive.

Plaintiff contends that New Jersey's choice of law rules should apply, and that their use

results in the application of New Jersey substantive law to questions of enforceability of the

agreement.  Plaintiff contends that the rule of Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S.

487 (1941) – a federal court sitting in diversity applies the choice of law rules of the state in

which it sits – extends to "*all* other cases involving application of state law so long as the use of

the forum's choice of law rules do not create a 'significant conflict' with a federal policy or

interest."  (Pl.'s Supp. Br. 10.)  Plaintiff cites no authority in support of this proposition, which

appears to be just plain wrong.  The only Third Circuit authority that appears in Plaintiff's

6

discussion of this point is <u>System Operations, Inc. v. Scientific Games Dev. Corp.</u>, 555 F.2d 1131, 1136 (3d Cir. 1977).  As Plaintiff acknowledges, <u>System</u> stands for the proposition that <u>Klaxon</u> extends to pendant jurisdiction claims.  <u>Id.</u>  In the instant case, no pendant jurisdiction claims are at issue, and <u>System</u> provides no support for Plaintiff's position, as it clearly states that the <u>Klaxon</u> rule does not extend to claims under federal law.  <u>Id.</u>

A possible source of Plaintiff's confusion is suggested when his brief discusses <u>Bianco v. Erkins (In re Gaston & Snow)</u>, 243 F.3d 599, 606 (2d Cir. 2001).  Plaintiff observes that, in <u>Bianco</u>, the Second Circuit stated: "Before federal courts create federal common law, 'a significant conflict between some federal policy or interest and the use of state law must first be specifically shown.'"  <u>Id.</u> (quoting <u>Atherton v. FDIC</u>, 519 U.S. 213, 218, (1997)).  This Court has no need, however, to create federal common law to decide the issues presently before it.[1]  <u>Bianco</u> and <u>Atherton</u> are inapposite.  Plaintiff has failed to show any legal basis for its contention that the rule of <u>Klaxon</u> applies here.

Nonetheless, even if this Court considers, for the sake of discussion only, that the rule of <u>Klaxon</u> applies to a federal question case, the choice of law inquiry would not result in choosing New Jersey law.  In <u>Homa</u>, the Third Circuit, applying <u>Klaxon</u> because jurisdiction was based on

---

[1] Rather, the Supreme Court has stated that, under the present circumstances, courts apply state laws regarding "validity, revocability, and enforceability of contracts generally."   <u>Doctor's Assocs. v. Casarotto</u>, 517 U.S. 681, 687 (1996).  <u>See also</u> <u>Trippe Mfg. Co. v. Niles Audio Corp.</u>, 401 F.3d 529, 532 (3d Cir. 2005) ("The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate.")  Lastly, the best support for the position that the instant choice of law problem is not a matter of federal common law comes from <u>Gay v. CreditInform</u>, 511 F.3d 369, 389 (3d Cir. 2007), in which the Third Circuit used Pennsylvania law, not federal common law, both to evaluate the governing law provision in the relevant arbitration agreement and to decide the choice of law issue before it. This Court therefore rejects the argument made by both parties that federal common law choice of law rules should apply here.

diversity of citizenship, considered whether courts in New Jersey (the forum state) would enforce a contractual choice of law.  558 F.3d at 227.  The Third Circuit formulated New Jersey law as follows:

> In deciding whether to enforce a contractual choice of law, the Supreme Court of New Jersey has cited the Restatement (Second) of Conflicts of Laws § 187(2) (1969) ("Restatement"), which provides that the law of the state chosen by the parties will apply unless
>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which * * * would be the state of the applicable law in the absence of an effective choice of law by the parties.

Id. at 227-228.

If this Court were to apply this standard, it could not conclude that the choice of law provision is unenforceable.  There is no dispute that the relevant governing law provision selects the law of the state of Delaware, and Plaintiff has not asserted that the agreement would be unenforceable under Delaware law.  To arrive at the outcome Plaintiff advocates, this Court would need to find that: 1) New Jersey has a materially greater interest than Delaware in the determination of the enforceability of the contract; and 2) New Jersey would be the state of the applicable law in the absence of an effective choice of law provision.  Plaintiff has offered no basis for this Court to conclude that New Jersey has a materially greater interest than Delaware in the determination of the enforceability of the contract.

Plaintiff's briefs attempt to portray Plaintiff as a New Jersey resident at the time he entered into any contract.  The Complaint, however, pleads otherwise: "At all times relevant to this complaint, WOOD was a citizen of, and resided in, the city of Wichita, Segwick County,

Kansas." (Compl. ¶ 2.)  Plaintiff may not now rely on a factual allegation which contradicts the

Complaint.  On a motion to dismiss, this Court treats the factual allegations asserted in the

Complaint as true.  Plaintiff cannot be a resident of Kansas for the purpose of the Complaint and

a resident of New Jersey for the motion to dismiss.  Furthermore, the Complaint states that

Plaintiff brings this action on behalf of a class of "persons with addresses in the state of Kansas."

(Compl. ¶ 55(a).)

According to the Complaint, the only circumstance that ties this case to the state of New

Jersey is the fact that the Defendant collection agency was located in the state and engaged in

conduct in New Jersey that violated a federal statute.  Yet this is a poor foundation on which to

rest the contention that New Jersey law should apply.  First, the relevant Restatement provision

focuses the inquiry on the particular issue at hand, which is the enforceability of a contract that

the debt collector is a successor in interest to, rather than the enforcement of federal debt

collection laws.  But even considering the question of whether, as a matter of public policy, New

Jersey has a materially greater interest in the enforcement of federal collection statutes (relative

to either Delaware or Kansas), this Court could not find that the scales tip toward New Jersey.

Plaintiff's briefs do not even address this question, no less persuade on it, and this Court is

skeptical that New Jersey, as a matter of public policy, has a materially greater interest in the

enforcement of federal debt collection statutes than does any other state.  Certainly there is

nothing in the record before this Court that would support such a conclusion.

The particular issue at hand, however, is the enforceability of the contract between

Plaintiff and the Bank.  Even if this Court were to allow Plaintiff to contradict the Complaint and

rely on the assertion that he was a resident of New Jersey when he entered into this contract, the

question would be whether New Jersey has a materially greater interest in the enforcement of the contract than does Delaware.  The answer would clearly be that it does not.  New Jersey's interest in protecting a party to a contract who moved to Kansas, and who is suing over acts that occurred while he was in Kansas, cannot be said to be materially greater than Delaware's interest in enforcing a contract entered into by a party which was a Delaware corporation at the time of contracting, located in the state of Delaware, and whose ties to Delaware have continued during the period of interest.  Between Plaintiff and the Bank, Delaware's interests in the enforceability of the contract are materially greater than New Jersey's.  Thus, even if this Court were to accept Plaintiff's contradiction of the Complaint, and perform the choice of law analysis that Plaintiff advocates, it would still conclude that New Jersey's choice of law rules would determine that the enforceability of the contract should be decided under Delaware law.

This Court has so far inquired into choice of law by measuring the interests of New Jersey against those of Delaware.  Yet the position that holds the most appeal is one that Plaintiff has not advocated, that Kansas has a materially greater interest in all the issues than does either New Jersey or Delaware.  Plaintiff is most persuasive when he raises the interest of a state in the protection of its consumers.  Yet, in the scenario alleged, the state with the greatest interest in protecting the putative class of Kansas consumers is Kansas.  Plaintiff has not advocated this position.

This case bears strong similarities to Gay, 511 F.3d 369.  In Gay, the plaintiff had brought suit under a federal statute, the Credit Repair Organizations Act.[2]  Id. at 374.  At issue were the

---

[2] This crucially distinguishes Gay from the Third Circuit's more recent decision in Homa v. Am. Express Co., 558 F.3d 225, 227 (3d Cir. 2009).  Jurisdiction in Homa was predicated on diversity of citizenship, not on a federal question, as in the instant case.  Id.  In Homa, then, the

arbitration provisions in the purchase agreement between plaintiff and defendant.  Id. at 375.  The purchase agreement contained both a governing law provision and an arbitration provision.  Id. at 387.  The plaintiff argued that the arbitration provision was unconscionable.  Id.  To decide the question of the unconscionability of the arbitration provision, the Third Circuit needed to decide which state's substantive law should be applied.  Id. at 388.  Gay thus presents a factual scenario with strong similarities to the instant case.  As in Gay, this Court must determine which state's substantive law to apply to the issue of the unconscionability of the arbitration provision.

In the instant case, like in Gay, the governing law provision does not expressly extend to choice-of-law principles.  In Gay, the Third Circuit therefore declined to base its choice of law on the governing law provision but, instead, inquired into which was the "reasonable" and "relevant" state to provide these principles.  Id. at 389.  The parties have not briefed the question of which state's choice of law rules would be most relevant, but choosing between Delaware and New Jersey does not impact the outcome, since Delaware, like New Jersey, applies the standard stated in Restatement (Second) of Conflicts of Laws § 187(2).  Hionis Int'l Enters. v. Tandy Corp., 867 F. Supp. 268, 271 (D. Del. 1994).  Under the choice of law rules of either Delaware or New Jersey, then, for the reasons explained above, the laws of New Jersey would not be chosen to evaluate the enforceability of the agreement.

This Court finds that, applying the choice of law rules common to New Jersey and Delaware, the enforceability of the contract should be decided under Delaware law.  Plaintiff has not contended that, under Delaware law, any aspect of the arbitration provision would be

---

Third Circuit could rely on the principle that "federal courts sitting in diversity apply the choice-of-law rules of the forum state."  Id.  This allowed the choice-of-law analysis to be considerably more straightforward.

unenforceable.  Because Plaintiff has not challenged the enforceability of the contract under

Delaware law, this Court has no basis to conclude that the contract is unenforceable.  The

arbitration provision in the contract is valid and enforceable under the relevant state law.  See

First Options v. Kaplan, 514 U.S. 938, 944 (1995).

       Because this Court has determined that the parties entered into an agreement to arbitrate,

and that this agreement is valid under the relevant state law, pursuant to 9 U.S.C. § 4,

Defendant's motion to compel arbitration will be granted.  Also, pursuant to 9 U.S.C. § 3, this

Court will stay all proceedings in this case pending completion of the arbitration.

## CONCLUSION

       For the reasons set forth above, Defendant's motion to compel arbitration and stay all

proceedings pending completion of arbitration is granted.


                            s/ Stanley R. Chesler
                            Stanley R. Chesler, U.S.D.J.

Dated: July 22, 2010

12